CENTRAL READY MIX COMPANY, appellant and cross-appellee, v. THE JOHN G. RUHLIN CONSTRUCTION COMPANY, appellee and cross-appellant; WENDELL CALDBECK, d/b/a Caldbeck Construction Company, et al. not participating in appeal.

No. 51856.

(Reported in 139 N.W.2d 444)

Jᴀɴᴜᴀʀʏ 11, 1966.

Brunk, Janss, Dreher, Wilson & Adams, of Des Moines, for appellant and cross-appellee.

Stewart, Miller, Wimer, Brennan & Joyce, of Des Moines, for appellee and cross-appellant.

Davis, Huebner, Johnson & Burt, of Des Moines, for The Firestone Tire and Rubber Company.

John H. Neiman, of Des Moines, for Wendell Caldbeck, d/b/a Caldbeck Construction Company.

MOORE, J.—This is a mechanic's lien foreclosure action for the balance claimed for ready-mix concrete and other building materials furnished by Central to Caldbeck, a subcontractor, for construction of an addition to Firestone's plant. The parties stipulated and the trial court ordered Firestone to pay into court the $43,000, which was owing Ruhlin, the general contractor, and that the money stand in lieu of Firestone's real property. Firestone was then dismissed from the action. Before trial Caldbeck took bankruptcy and did not defend. Ruhlin, the only defendant who litigated Central's claim, asserted plaintiff had been fully paid by checks issued by Ruhlin to Central and Caldbeck as joint payees plus payments by Caldbeck. Ruhlin also defended on the ground Central had taken a $15,000 note from Caldbeck as security and therefore was not entitled to a mechanic's lien.

From the trial court's judgment and foreclosure decree for only $3807.75 of its $42,897.39 claim, plaintiff has appealed. Ruhlin has cross-appealed from denial of its claim Central had taken such security as to defeat a mechanic's lien right. We affirm on both appeals.

For brevity we have and will continue to refer to plaintiff, Central Ready Mix Company as Central; to defendants, The John G. Ruhlin Construction Company as Ruhlin; Wendell Caldbeck, doing business as Caldbeck Construction Company, as Caldbeck, and The Firestone Tire and Rubber Company as Firestone.

The record fills 512 pages including many exhibits showing the numerous transactions between the parties in construction of the Firestone addition of over eight acres of floor space. Reasonable length of an opinion limits us to a general statement of the facts.

Prior to June 5, 1963, Ruhlin entered into a contract with Firestone to build the addition according to plans and specifications set out therein for a total cost of $840,000.

On the above date Ruhlin in writing subcontracted part of the work to Caldbeck at a price of $450,000 which was later increased by approximately $28,000 for extra work. The work to be done by Caldbeck required the use of a large amount of ready-mix concrete, reinforcing wire and other materials sold by Cen-

tral. Before contracting with Ruhlin, Caldbeck obtained price quotations from Central.

Before contracting with Caldbeck, Ruhlin made an investigation concerning his reputation as a builder. C. A. Duke, vice-president of Central, advised Ruhlin Caldbeck was experienced and capable of doing the job. Duke had known Caldbeck more than 15 years.

After getting the job Caldbeck made an agreement with Central, partly written and partly oral, providing Central would furnish him ready-mix concrete, wire mesh and certain other materials for the Firestone project. Central agreed to bill Caldbeck at $16.45 per cubic yard for #3000 concrete and $17.45 for #3000 limestone ready-mix. From this Caldbeck was to be allowed a quantity discount of 70¢ per cubic yard and also $1.00 per cubic yard upon prompt payment of account. By oral agreement the 70¢ quantity allowance was reduced to 55¢ in August 1963.

Beginning June 19 and continuing until December 30, 1963, Central furnished Caldbeck ready-mix and other materials for a total of $190,587.13. Central made delivery to the Firestone project.

To avoid cost of a performance bond, Caldbeck and Ruhlin agreed that each month Caldbeck was to submit a progress report supported by invoices of the suppliers of materials showing what had been furnished on the job and then Ruhlin would issue its check for the amount due, payable jointly to the supplier and Caldbeck. There is no direct evidence Central knew the exact details of the plan but the conclusion is inescapable that Duke was aware of the general plan.

Caldbeck's first progress report to Ruhlin for materials furnished by Central was supported by invoices furnished for that purpose by Central. Thereafter Ruhlin's check of $9430.86 dated August 14, 1963, and payable jointly to Central and Caldbeck together with the attached remittance advice was received by Caldbeck. It was endorsed by Duke's penned signature as vice-president of Central and released to Caldbeck who in turn deposited it in his general account on August 20. No credit was entered in Central's ledger of this payment. Duke testified no

remittance advice was attached to the check when he signed it for Central at Caldbeck's office.

About the same time as the endorsement of this check, Central, acting through Duke, took Caldbeck's promissory note for $15,000 dated August 15, 1963. The amount of this note plus a discount credit of $2724.84 was entered as a credit on Caldbeck's account for materials on the Firestone job. Duke testified he was aware Caldbeck needed financial help. The note provided for no interest and was payable January 1, 1964. Part of the agreement was reduction of the quantity discount. This credit remained on Central's books until after the note became due and unpaid. Central then removed the credit and filed its mechanic's lien on January 7, 1964.

The next progress report by Caldbeck resulted in Ruhlin's issuance of its check for $57,249.27 dated September 16, 1963, made payable jointly to Central and Caldbeck. This check was endorsed in pen by Duke for Central and released to Caldbeck. No record of this check was made in Central's books. At that time Caldbeck made a payment of $43,589.58 to Central.

The September progress report was followed by Ruhlin's check for $55,428.50 dated October 15, 1963, payable jointly to Central and Caldbeck. Again Duke endorsed this check by pen and released it to Caldbeck. A payment of $41,169.38 was then made to Central by Caldbeck.

Caldbeck's October progress report was followed by Ruhlin's check for $45,627.28 dated November 18, 1963, payable jointly to Central and Caldbeck. This check was endorsed by Caldbeck and released to Central. Central credited this check to Caldbeck's account and endorsed it for deposit to its bank account. This transaction was handled by Duke.

Central's records after allowing cash payments, quantity and cash discounts show Caldbeck's balance as $42,897.39. Full credit for the Ruhlin checks results in an additional credit of $37,349.67 to which must be added a $1739.97 cash discount for a total of $39,089.64. We agree with the trial court's allowance of this additional credit and the resulting judgment for Central of $3807.75.

I. Central contends evidence of the agreement between

Ruhlin and Caldbeck for progress payments to Caldbeck's materialmen of which it had no knowledge and to which Central objected should not be considered. We agree. As we have pointed out, however, Central furnished invoices and assisted in preparing the first progress report. It thereafter furnished invoices to Caldbeck for other reports to Ruhlin.

■ II. The facts here clearly establish Central knew the Ruhlin joint-payee checks were issued as payment on its account with Caldbeck for materials furnished on the Firestone job. Under the circumstances Central was required to retain these checks and enter the full amounts as payments. Likewise Caldbeck was fully advised the checks were issued for this purpose. Failure of Central as payee to properly apply the payments does not lead to further liability of Ruhlin. Weyerhaeuser Co. v. Hvidsten, 268 Minn. 448, 129 N.W.2d 772; Westwood Building Materials Co. v. Valdez, 158 Cal. App.2d 107, 322 P.2d 79; Edwards v. Curry, 152 Cal. App.2d 726, 313 P.2d 613; Wells v. Planters Lumber Co., 230 Ark. 570, 327 S.W.2d 1.

■ III. Central admittedly filed its mechanic's lien in proper form and within the time required by statute but it had the burden to prove by a preponderance of the evidence the balance owing on the Caldbeck account. Rule 344(f)5, R. C. P. This plaintiff did only to the extent of $3807.75.

We have carefully examined Central's other contentions and find them without merit.

■ IV. Ruhlin on cross-appeal asserts the quantity discount should be allowed at the original 70¢ per cubic yard rather than the 55¢ to which Central and Caldbeck agreed in August 1963. We do not agree. The right to modify a written contract by a subsequent oral one is well established. Berg v. Kucharo Constr. Co., 237 Iowa 478, 21 N.W.2d 561; Kaltoft v. Nielsen, 252 Iowa 249, 106 N.W.2d 597; S. Hanson Lumber Co. v. DeMoss, 253 Iowa 204, 111 N.W.2d 681. See also 20 Am. Jur., Evidence, section 1163.

■ ■ V. Ruhlin argues the trial court erred in holding the $15,000 note from Caldbeck to Central was not a payment nor a loan but merely evidenced the debt then in existence. Ruhlin asserts it amounted to taking collateral security so as to

defeat Central's mechanic's lien under section 572.3, Code, 1962, which provides: "Collateral security before completion of work. No person shall be entitled to a mechanic's lien who, at the time of making a contract for furnishing material or performing labor, or during the progress of the work, shall take any collateral security on such contract."

Black's Law Dictionary, Fourth Ed., page 327, gives this definition: "Collateral Security. A security given in addition to the direct security, and subordinate to it, intended to guaranty its validity or convertibility or insure its performance; so that, if the direct security fails, the creditor may fall back upon the collateral security. Butler v. Rockwell, 23 P. 462, 14 Colo. 125; McCormick v. Bank, C. C. Ind., 57 F. 110; Perfection Tire & Rubber Co. v. Kellogg-Mackay Equipment Co., 194 Iowa 523, 187 N.W. 32, 33; Barbin v. Moore, 85 N. H. 362, 159 A. 409, 415, 83 A. L. R. 62."

In Perfection T. & R. Co. v. Kellogg-Mackay, supra, 194 Iowa 523, 526, 187 N.W. 32, 33, we say: "The word 'collateral' in its commonly accepted legal definition means additional security to the principal obligation and subsidiary thereto. The etymology of the word indicates that it is something that runs along with and parallel to something else of a similar character. It is something that stands by the side of the principal promise as an additional or cumulative means for securing the payment of the debt. Moffatt v. Corning, 14 Colo. 104 (24 Pac. 7). It is a security in addition to the responsibility of the debtor. In re Waddell-Entz Co., 67 Conn. 324 (35 Atl. 257)."

In the above case plaintiff took a conditional sales contract reserving title to all equipment it installed and reserved the right to enter upon the premises and remove it if not paid. We held such an arrangement provides such security in addition to the obligation to pay as to defeat the right to a mechanic's lien under the statute. We have no such facts here.

The mere taking of a promissory note does not destroy the right to file a mechanic's lien. German Bank v. Schloth, 59 Iowa 316, 13 N.W. 314; Lovell-Scholfield Lbr. Co. v. Carter, 198 Iowa 238, 199 N.W. 405.

By taking Caldbeck's note Central received no additional

security or guaranty. There is no evidence Central relied only on Caldbeck's credit or intended to waive its known right to a mechanic's lien. We agree with the trial court's ruling that Central had not taken collateral security such as to defeat its right to a mechanic's lien.

■  VI.  In its reply brief Central calls to our attention an additional discount of $1604.63 which it concedes the trial court erred in not allowing and which would reduce Central's judgment by that amount. The record indicates the trial court could have so found. Such error, if any, is not assigned and argued by Ruhlin and is not before us. Rule 344(a)4, R. C. P., provides errors or propositions not stated or argued shall be deemed waived.

We find no reversible error.

Affirmed on both appeals.

All JUSTICES concur.