FIRSTCENTRAL BANK, Formerly Known as Central Federal Savings and Loan Association, Chariton, Iowa, Appellee,

v.

Guy J. WHITE and Marlene V. White, Individually, et al., Appellants.

O'KEEFE ELEVATOR COMPANY, INC., Appellee,

v.

Guy J. WHITE and Marlene V. White, Individually, et al., Appellants.

No. 86–266.

Supreme Court of Iowa.

Feb. 18, 1987.

I. John Rossi of Woodward, Davis & Rossi, Des Moines, for appellants.

William L. Shelton, R. William Petersen, and Paul M. Goldsmith of Shelton Law Firm, Chariton, for appellee FirstCentral Bank.

Richard O. McConville of Scalise, Scism, Sandre & Uhl, Des Moines, for appellee O'Keefe Elevator Co., Inc.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER, and NEUMAN, JJ.

LARSON, Justice.

The defendants, Guy J. White and Marlene V. White, appeal from a decree foreclosing a real estate mortgage held by FirstCentral Bank and a mechanic's lien held by O'Keefe Elevator Company. We modify and affirm.

The Whites owned property in Chariton, Iowa, described as

[t]he West One-Half (W ½) of Lots One (1) and Four (4) in Block Fifteen (15) in the Original Town of Chariton, Lucas County, Iowa.

On December 15, 1982, they filed a declaration of horizontal property under Iowa Code chapter 499B (1981) to construct a ten-unit condominium. On January 3, 1983, they gave a promissory note to FirstCentral and secured it with a mortgage. The mortgage was recorded on January 4, 1983, using the above legal description.

The Whites defaulted on the loan and FirstCentral began foreclosure proceedings. The Whites also failed to pay

O'Keefe for an elevator installed on the premises, and O'Keefe filed a mechanic's lien. The actions foreclosing the real estate mortgage and the mechanic's lien were consolidated for trial. Foreclosure decrees were entered in favor of both plaintiffs.

On appeal, we address three issues: (1) whether the mortgage was so defective that it was unenforceable; (2) whether O'Keefe should have been permitted to amend its mechanic's lien statement; and (3) whether the court erred in imposing a mechanic's lien, in light of several alleged defects in the lien statement. A fourth issue, involving estoppel, need not be addressed in view of our disposition of the case.

## I. *Foreclosure of the Real Estate Mortgage.*

The Whites contend that the mortgage given to FirstCentral is unenforceable because it did not comply with the provisions of our "Horizontal Property Act," Iowa Code ch. 499B (1981).

Iowa Code section 499B.3 prescribes the initial steps in the establishment of a "horizontal property regime" or condominium:

When the sole owner or all of the owners, or the sole lessee or all of the lessees of a lease desire to submit a parcel of real property upon which a building is located or to be constructed to the horizontal property regime established by this chapter, a declaration to that effect shall be executed and acknowledged by the sole owner or lessee or all of such owners or lessees and shall be recorded in the office of the county recorder of the county in which such property lies.

Section 499B.4 requires that such a designation include detailed descriptions of the land and building and further requires it to state:

The apartment number of each apartment, and a statement of its location, approximate area, number of rooms, [any] immediate common area to which it

has access, and any other data necessary for its proper identification.

Iowa Code § 499B.4(3) (1981).

Because one purpose of this detailed description is to facilitate the separate ownership and transfer of individual units, section 499B.5 requires that deeds to the individual units contain what could be called a condominium description—one complying with section 499B.4.

In the present case, the Whites claim the mortgage offends the condominium statute by using a traditional form of legal description rather than one suited for transfer of a condominium. (The mortgage was executed after the Whites had filed their election to treat the property as a horizontal property regime under section 499B.3.)

■ First, we note that, while section 499B.4 requires a condominium description for deeds, there is no express requirement that a mortgage contain such a description. Section 499B.12, however, provides:

1. Subsequent to recording the declaration provided for in section 499B.3, and while the property remains enrolled in a horizontal property regime, no lien shall thereafter arise or be effective against the property. *During such period liens or encumbrances shall arise or be created only against the individual apartment* and the general common elements and limited common elements where applicable, appurtenant to such apartment, in the same manner and under the same conditions in every respect as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership.

(Emphasis added.)

■ We agree with the trial court that the purpose of section 499B.12(1) is not to void a mortgage which does not separately describe and identify the individual units, but to prevent an encumbrance by the owner of one portion of the project from clouding the title to other units.

In other words, if the Whites had deeded a condominium unit to another party and

then given the mortgage to FirstCentral covering the whole project, the mortgage would be ineffective as to the unit that had been transferred. That is not the case here; the Whites held title to the whole project at all times.

▮ The proper description for the mortgage would obviously have been one that contained the same information as required for deeds under section 499B.4, but an erroneous description will not render a mortgage unenforceable. The general rule is that

> [t]he validity of a mortgage may be attacked, in foreclosure proceedings, for illegality, fraud, duress, or other such matters which undermine its very foundation, but not because of a mere want of authority to execute the mortgage, or to receive it, as the case may be, not affecting the validity of the debt intended to be secured, or for indefiniteness *or mistake in the description of the property intended to be pledged.*

59 C.J.S. *Mortgages* § 506(c) (1949) (emphasis added) (footnotes omitted).

▮ Here, it is clear the parties intended to create a mortgage on the condominium property. Despite the language of section 499B.12(1), the failure of the mortgage to separately identify and describe the units of the condominium did not void the mortgage. We therefore affirm on this issue.

## II. *Amendment of Mechanic's Lien Statement.*

O'Keefe's mechanic's lien statement originally described the White property as: W ½ of Lots 1 and 4 in Block 15 in the original town of Chariton, Lucas County, Iowa also known as Charleston Court, 810 Court Avenue, Chariton, Iowa.

This lien statement was filed on November 1, 1983. Because this was after the Whites' condominium declaration under Iowa Code section 449B.3, the statement should have identified and described the individual units. O'Keefe sought permission of the court to amend the lien statement in order to correct the description.

*See* Iowa Code § 572.26 ("Any lien statement may be amended by leave of court in furtherance of justice, except as to the amount demanded."). O'Keefe did not attempt to change the amount demanded.

▮ The district court allowed the amendment, and the Whites complain this was error. The Whites' objection is that the application to amend was filed seven days after the court's deadline for the closing of pleadings. Allowance of an amendment to a mechanic's lien statement or to a pleading referring to such a statement is a matter of discretion, and we will reverse only on a finding of an abuse of that discretion. *See Atlantic Veneer Corp. v. Sears,* 232 N.W.2d 499, 503 (Iowa 1975); 53 Am. Jur.2d *Mechanics' Liens* § 224, at 744–45 (1970). We find no abuse here.

The Whites also argue that the court's allowance of the amendment amounted to a creation of a new lien by the court, rather than by a contract of the parties. We summarily reject this argument, as well as several others attacking the court's allowance of the amendment, on the ground there clearly is no merit to them.

## III. *Miscellaneous Lien Defects.*

The Whites argue that, in addition to the problem with the amendment, other defects existed in the lien statement: (1) the work performed was worth less than the amount claimed; (2) the work was not completed; (3) O'Keefe took independent security, thus losing its right to a mechanic's lien under Iowa Code section 572.3; and (4) the statement did not contain an attached "Exhibit A," as referred to by it.

O'Keefe removed some microprocessor control boards from the elevator, and the Whites argue this had two impacts on two of these questions: It reduced the value of the elevator below the amount stated in the lien statement, and it amounted to the taking of independent security (apparently on the theory the control boards were removed by O'Keefe to force payment by the Whites). The Whites argue that the control boards were worth $940, thus making it error for the court to impose a lien on the

whole amount claimed. O'Keefe responds that it substantially complied with the contract and, in any event, it should have a lien for $22,260, which is the contract amount of $23,200 less $940 for the control boards. We believe the amount allowed should be reduced by $940 and therefore modify the decree accordingly.

The Whites also argue that the removal of the control board voids the mechanic's lien because it amounts to the taking of collateral security. *See* Iowa Code § 572.3 ("No person shall be entitled to a mechanic's lien who, at the time of making a contract for furnishing material or performing labor, or during the progress of the work, shall take any collateral security on such contract.").

Even if O'Keefe's purpose in removing the control board was, as the Whites suggest, to enforce payment, we do not believe this is the kind of collateral security referred to in section 572.3. *See Central Ready Mix Co. v. Ruhlin Construction Co.*, 258 Iowa 500, 506, 139 N.W.2d 444, 447–48 (1966) ("Collateral" security means "something that runs along with and parallel to something else of a similar character.... It is a security in addition to the responsibility of the debtor."). In this case, removal of the control boards would not be security in addition to the Whites' responsibility. The most that could be said is that this was an attempt to force the Whites to meet their own responsibility. We therefore reject this argument.

The lien statement was on an Iowa State Bar Association form, which referred to an "Exhibit A," presumably to be attached. No attachment designated as such was in fact attached. The statement did, however, contain a verified statement containing all of the elements required by Iowa Code section 572.8. We therefore reject this argument.

We have considered all of the arguments raised by the Whites and, without discussing all of them individually, find no basis for reversal under any of them. We do, however, modify the lien amount as discussed in Division III to reduce it by $940.

In all other respects, we affirm the district court. Costs are taxed to the appellants.

AFFIRMED AS MODIFIED.