**BUILDERS KITCHEN & SUPPLY CO., Appellant,**

v.

**Richard W. PAUTVEIN and Janice Jean Pautvein, Appellees.**

No. 97–1780.

Supreme Court of Iowa.

Oct. 13, 1999.

Richard K. Updegraff of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

Steven L. Serck of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

Considered by CARTER, P.J., and LAVORATO, SNELL, CADY, and SCHULTZ,* JJ.

LAVORATO, Justice.

Iowa Code section 572.3 (1997) denies a mechanic's lien to anyone "who, at the time of making a contract for furnishing material or performing labor, or during the progress of the work, take[s] any collateral security on such contract." The issue is whether taking personal guarantees from parties who are not obligated on the contract is taking collateral security within the meaning of the statute. The district court thought so and denied a supplier's suit to enforce its mechanic's lien against the defendants' town home. We agree and affirm.

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

## I. Background Facts and Proceedings.

Builders Kitchen & Supply Co. is a Des Moines based business that sells kitchen materials and supplies to contractors and homeowners in Iowa. Carwil, Inc., a corporation, is in the business of constructing homes. Carwil's sole shareholders are James Carlson and Sidney Wilson.

Carwil planned to build town homes in a Dallas County housing development and planned to use Builders as its kitchen subcontractor. Carlson had previously operated a housing construction company called JLC Construction that often failed to make timely payments to Builders for materials. Builders was willing to contract with Carwil, but had reservations about doing so because of JLC's prior credit delinquencies. To allay its concern, Builders required Carlson and Wilson in August 1995 to guarantee payment should Carwil default on its payments to Builders. As a further condition of extending credit to Carwil, Builders insisted that it be allowed to send Carwil customers an Iowa Code section 572.14(3) prelien notice.

In September 1995 Richard W. Pautvein and Janice Jean Pautvein contracted with Carwil to build their town home in the housing development. Under the contract, the Pautveins were to make payments to Carwil upon Carwil's request at various stages of construction. The payments were contingent upon Carwil submitting signed mechanic's lien waivers for all materials furnished and labor performed. The Pautveins had been making progress payments all along to Carwil without obtaining the mechanic's lien waivers.

Builders served as the kitchen subcontractor regarding the town home Carwil was building for the Pautveins. The Pautveins' only contact at Builders was Douglas Mayo, who served as Builders' sales manager.

Builders sent a prelien notice to the Pautveins on February 1, 1996. The letter informed the Pautveins that they should not pay Carwil until Carwil provided the Pautveins with a waiver of Builders' mechanic's lien.

A few weeks later, the Pautveins received a fourth request from Carwil for a progress payment of about $79,000. Before making the payment, the Pautveins contacted Mayo and asked whether Carwil was in financial trouble or slow on payments. Mayo said "no, nothing's the matter." (In fact, during the period that Carwil was building the town homes, Carwil's payments were almost always late, and the payments became more noticeably delinquent by November 1995.)

In that conversation, Mayo told the Pautveins that the prelien letter was a standard letter that it sent to all of its customers. This was not true because, of all the contractors with whom Builders did business, the only contractor whose customers received such letters was Carwil. The Pautveins told Mayo that they were about to make a big payment to Carwil that day and asked whether they should make the check payable to Builders for the materials that Builders had supplied. Mayo answered by telling them to make the payment to Carwil like they had done in the past.

Following their conversation with Mayo, the Pautveins made the $79,000 payment to Carwil. They paid Carwil an additional sum of approximately $27,000 on April 1. Following their usual practice, the Pautveins did not ask Carwil for a lien waiver.

From November 1995 on, Carwil continued to experience financial difficulties. Finally, in May 1996, Carwil went out of business.

On May 17, 1996, Builders filed a mechanic's lien against the Pautveins' town home in the amount of $38,660.04, the amount Carwil failed to pay Builders. Before the filing, Carlson offered Builders a lot that Carwil owned free and clear as partial or total satisfaction of the Pautvein account. The property was worth between $30,000 and $50,000. Builders declined the

offer, telling Carlson that it was not in the real estate business. Carwil eventually sold the property in November for $35,000.

Later, Builders sued to foreclose the mechanic's lien. The district court found that Builders had accepted collateral security within the meaning of Iowa Code section 572.3 in the form of personal guarantees from Carlson and Wilson. The court concluded that Builders' acceptance of the guarantees defeated Builders' mechanic's lien. The court rejected the Pautveins' defenses of equitable estoppel and failure to mitigate damages.

Builders appeals from the district court's ruling on the collateral security issue, and the Pautveins cross-appeal from the court's ruling on their defenses of equitable estoppel and failure to mitigate damages. Because we hold in favor of the Pautveins on the collateral-security issue, we do not address their cross-appeal.

## II. Scope of Review.

▮ Proceedings to enforce mechanic's liens are in equity. Our review is, therefore, de novo. *See Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 705 (Iowa 1985). We examine the entire record and determine the parties' rights anew from the evidence presented. *See id.*

## III. The Collateral Security Issue.

▮ Iowa Code section 572.3 provides:

No person shall be entitled to a mechanic's lien who, at the time of making a contract for furnishing material or performing labor, or during the progress of the work, shall take any collateral security on such contract.

The pivotal issue is whether the personal guarantees that Builders took from Carlson and Wilson are collateral security within the meaning of this provision. The Pautveins contend, and the district court found, that the guarantees did indeed constitute collateral security within the mean-

ing of section 572.3. For reasons that follow, we agree.

A predecessor statute similarly provided:

No person shall be entitled to a mechanic's lien, who, at the time of making or executing a contract for furnishing material or performing labor, or during the progress of the work, erection, building or other improvement, shall take any collateral security on such contract. . . .

Iowa Code § 3088 (1897).

This court defined "collateral" within the meaning of this statute to mean

additional security to the principal obligation and subsidiary thereto. The etymology of the word indicates that it is something that runs along with and parallel to something else of a similar character. It is something that stands by the side of the principal promise as an additional or cumulative means for securing the payment of the debt. *It is a security in addition to the responsibility of the debtor.*

*Perfection Tire & Rubber Co. v. Kellogg–Mackay Equip. Co.*, 194 Iowa 523, 526, 187 N.W. 32, 33 (1922) (citations omitted) (emphasis added).

In *Perfection Tire & Rubber*, the court denied a mechanic's lien to a supplier who had retained title to the material and equipment installed in the building against which the mechanic's lien had been filed. The supplier had reserved the right to take possession and enter the premises to remove the material and equipment. In denying the mechanic's lien, the court interpreted the statute—section 3088—this way:

Under the first clause of the section, if collateral security is taken, ipso facto the right to the lien is denied. In cases arising under the first division or sentence of this section, the only question to be determined is whether or not the person, furnishing material or performing labor, took collateral security under the contract for furnishing material or

performing labor. Stating the provision in another form, if the person claiming the lien has taken collateral security at the time of making the contract to furnish material or during the progress of the work, he is not entitled to the lien. This is true independently of the presumed intention of the parties, since the statute in express terms denies the right to the lien and the lien does not exist independently of the statute.

*Id.* at 527–28, 187 N.W. at 34.

Applying the statute to the facts of the case, the court concluded

that the retention of title to the materials and equipment furnished by the [supplier] to [the building owner] under the original contract was the taking of collateral security within the meaning of the law. It possesses all the earmarks, and the [supplier], having reserved unto himself the title and the right of reentry, *did not look only to the personal responsibility of [the building owner], but secured himself by an additional and cumulative means for the securing of the payment of the debt.*

*Id.* at 530, 187 N.W. at 35 (emphasis added).

Later, in *Clemens,* this court had the opportunity to revisit a collateral security issue similar to that which we decided in *Perfection Tire & Rubber. See Clemens,* 368 N.W.2d at 713. In *Clemens,* the court was interpreting Iowa Code section 572.3 (1981), which substantially mirrors the present Iowa Code section 572.3. Relying on *Perfection Tire & Rubber,* the court in *Clemens* held that a contractor gave up its right to a mechanic's lien when during construction the contractor requested and received from the building owner collateral security in the form of two shares in a limited partnership. *Id.* at 715.

*Central Ready Mix Co. v. John G. Ruhlin Construction Co.,* 258 Iowa 500, 139 N.W.2d 444 (1966), a case upon which Builders heavily relies, stands in contrast to *Perfection Tire & Rubber* and *Clemens.*

In *Central Ready Mix,* a supplier took a promissory note from a contractor. The court held the promissory note was not a collateral security. 258 Iowa at 507, 139 N.W.2d at 448. Distinguishing *Perfection Tire & Rubber,* the court said:

[In *Perfection Tire & Rubber*] the [supplier] took a conditional sales contract reserving title to all equipment it installed and reserved the right to enter upon the premises and remove it if not paid. We held such an arrangement provides such security in addition to the obligation to pay as to defeat the right to a mechanic's lien under the statute. We have no such facts here.

The mere taking of a promissory note does not destroy the right to file a mechanic's lien.

By taking [the subcontractor's] note [the supplier] received *no additional security or guaranty....* We agree with the trial court's ruling that [the supplier] had not taken collateral security such as to defeat its right to a mechanic's lien.

*Central Ready Mix,* 258 Iowa at 506–07, 139 N.W.2d at 448 (citations omitted) (emphasis added).

■ The rule that emerges from these three cases is that there is no collateral security within the meaning of section 572.3 if the only security given is the additional promise to pay from a party already obligated to pay for the materials. The rule is otherwise if such party furnishes security *in addition* to the party's promise to pay. For example, had the contractor in *Central Ready Mix* furnished the supplier a security interest in an asset the contractor owned, the security interest would have constituted collateral security within the meaning of section 572.3.

Here, as the district court found, Builders agreed to supply material for the Pautveins' home pursuant to a credit agreement between Carwil and Builders. And, before Builders ever supplied any material for the Pautveins' home, Builders requested and received personal guaranties from Carlson and Wilson. The guarantee in-

strument signed by Carlson and Wilson provided:

> In consideration of extension of credit by Builders Kitchen & Supply Company, I hereby personally guarantee to pay on demand any and all sums due that my/our company shall fail to pay.

Carwil is a corporation and therefore an entity separate from its owners, Carlson and Wilson. Like the district court, we conclude the personal guarantees from Carlson and Wilson as individuals were collateral security within the meaning of section 572.3. The guarantees were security in addition to the responsibility of the party already obligated to pay for the materials, here Carwil. Builders did not look only to the personal responsibility of Carwil, but secured itself by an additional and cumulative means in the form of the personal guarantees. *Cf. Charles Betcher Co. v. Cleveland*, 13 S.D. 347, 83 N.W. 366, 367 (1900) (interpreting statute similar to section 572.3 and holding that "while the notes given by the party primarily liable will not ordinarily be held to be a waiver of the lien, a note with third persons as securities will be regarded as collateral security, and held to constitute such waiver").

## IV. Disposition.

Because we conclude the guarantees were collateral security within the meaning of section 572.3, we hold that Builders had no lien to enforce. The district court was therefore correct in refusing to enforce the mechanic's lien that Builders had filed. We affirm.

**AFFIRMED.**