Argued and submitted September 6, reversed and remanded October 30,
reconsideration denied December 20, 1985, petition for review denied
February 11, 1986 (300 Or 545)

MEDFORD SCHOOL DISTRICT NO. 549C ex rel
NORTH COAST ELECTRIC COMPANY et al,
*Appellants,*

*v.*

PETERSON & JONES COMMERCIAL
CONSTRUCTION, INC. et al,
*Respondents.*

(83-3379-J-3; CA A34081)

708 P2d 623

William R. Turnbow, Eugene, argued the cause for appellants. With him on the briefs was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

William G. Purdy, Medford, argued the cause for respondents. With him on the brief was Foster & Purdy, Medford.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action by North Coast Electric Company (plaintiff), both in its own name and in the name of the contracting agency, on a public contract bond to recover the value of materials which plaintiff sold to Martt Electric Company, Inc. Martt was a subcontractor on a school construction project for which defendant Peterson and Jones Commercial Construction, Inc. (defendant), was the general contractor. Defendant Travelers Indemnity is the surety on defendant's performance bond. Martt has since gone through bankruptcy and has been dismissed from the case; plaintiff took default judgments against its principals. The trial court held that plaintiff's receipt of checks which defendant issued to plaintiff and Martt jointly in amounts whose total was greater than the value of the goods plaintiff supplied to Martt constituted payment in full to plaintiff for those goods. Plaintiff appeals; we reverse.

There are no significant factual disputes. Plaintiff had been Martt's supplier for some time before this project and knew that Martt was in financial difficulties. Before agreeing to furnish supplies which Martt needed to fulfill its subcontract with defendant, plaintiff required Martt to request defendant to pay the contractual monthly progress payments by checks made out to plaintiff and Martt jointly. In its normal course of business, Martt submitted statements to defendant around the 25th of each month; defendant then paid the amount due around the middle of the next month. Plaintiff cashed the checks and, pursuant to its agreement with Martt, retained the full amount due it as of the latest date each check covered. It then paid Martt the balance. That was a customary practice in the business, but defendant did not specifically know the arrangement between plaintiff and Martt. Defendant made its last progress payment on March 14, 1983, covering work through February 25, 1983. Plaintiff has not been fully paid for materials furnished Martt after the latter date. It seeks the amount due, together with interest at the contractual rate, less a partial payment which defendant made from the retainage on the subcontract.

The trial court noted that there is no controlling Oregon law and, relying on *Post Bros. Constr. Co. v. Yoder,* 20 Cal 3d 1, 141 Cal Rptr 28, 569 P2d 133 (1977), held that

"[w]hen there is no agreement between the contractor and the materialman as to allocation of proceeds, the materialman, by endorsing the joint check, is deemed to have received the money due him." *See Post Bros. Constr. Co. v. Yoder, supra,* 20 Cal 3d at 5. We agree with the trial court's statement but hold that it applied the *Post Bros.* rule incorrectly. The crucial question is what is "the money due him" which the materialman is deemed to have received. Defendant argues that the materialman must be deemed to have received the full amount of the check, even if that amount is greater than the subcontractor owed at the time, and that the materialman has been fully paid if the total checks received equal the total goods ultimately supplied. For example, a materialman who receives a joint check for $10,000 will be deemed to have been paid for goods of that value, even though the goods actually furnished to the relevant date may total only $2,500. That would be the case, under the trial court's view, even though the materialman turned over the excess to the subcontractor. The materialman would then supply the next $7,500 worth of goods at its own risk.

Defendant's argument misunderstands the California cases and makes little practical sense. It would require materialmen to hold out the entire amount received by joint checks until the total equaled the expected sales to the subcontractor over the life of the contract. In the meantime, the subcontractor would still have to pay its employes and other expenses but would have no income to do so. The California rule does not, in fact, produce that result. "[T]he money due him" refers, not to all money which may ultimately be due, but only to the money due *as of the date the check covers.* In this case, each check constituted payment for materials supplied through approximately the 25th of the previous month, which was when Martt submitted its statements to defendant. There was no reason for defendant to expect those progress payments to cover future advances to Martt from plaintiff or from anyone else.

In *J.S. Schirm Co. v. Rollingwood Homes Co.,* 56 Cal 2d 789, 17 Cal Rptr 1, 366 P2d 444 (1961), the defendant was a general contractor who was building homes on 127 lots. It arranged with a subcontractor to install wallboard in the houses, paying for each lot separately; the plaintiff was the

subcontractor's supplier. For the first 116 houses, the defendant paid by joint checks to the subcontractor and the plaintiff, but it stopped the joint check system for the remaining lots. The plaintiff, when it received a check, determined which lots the check covered, kept enough from it to pay for materials which it had furnished for those lots and gave the remainder to the subcontractor. By the time the joint check arrangement stopped, the gross amount of the joint checks was significantly greater than the total amount owed the plaintiff for materials supplied for all 127 houses. The trial court held that the plaintiff had been paid in full, but the California Supreme Court reversed. It emphasized that each check applied to specific lots and that, just as the plaintiff was entitled to part of each check, the subcontractor was also entitled to part. The joint checks issued for certain lots did not free the defendant from its obligation to pay for materials furnished thereafter to other lots.

*Post Bros. Constr. Co. v. Yoder, supra,* on which defendant and the trial court relied, is not inconsistent with *J.S. Shirm.* The plaintiff, the materialman, kept a running account with the subcontractor for a number of jobs. It credited each payment to the earliest unpaid invoices without regard to the source of the funds. Thus, the plaintiff did not determine what share of the joint check issued for the job in question covered materials on that job, and it did not credit all amounts received on that job to supplies furnished for the job to which the check related. Rather, it credited some of the amounts received on one job to supplies furnished for others. The court held that the plaintiff could not recover from a general contractor when it failed to determine how much of each joint check was intended to pay for materials it had supplied for the job to which the check related. That determination was essential to deciding how much of each check actually belonged to the materialman rather than to another joint payee. The plaintiff lost, because it had comingled money from several jobs and thus could not show that it had been underpaid on the one in question.

The Oregon case closest to this one is *Portland Elec. and Plum. v. Simpson,* 59 Or App 486, 651 P2d 172 (1982), *former opinion adhered to,* 61 Or App 266, 656 P2d 394, *rev den* 294 Or 682 (1983). We construed a lien release made contemporaneously with a progress payment made by a joint check to

cover only materials supplied to the date of the billing rather than to the date of the check. There was no claim that the release covered materials supplied after the date of the check. *Simpson* is consistent with the *J.S. Shirm* rule and provides support for our adoption of it. That rule is clear and appears to meet the normal needs of the construction industry. The parties may always change it by an agreement that a different arrangement will apply. Because the court did not apply the *J.S. Shirm* rule as we have construed it, it erred.

Reversed and remanded.