0799

GLIDDEN COATINGS & RESINS, a DIVISION OF SCM CORP., Appellant v. SUITT CONSTRUCTION CO., INC., and Earl Cummins d/b/a Arrow Painting and Sandblasting, of whom Suitt Construction Co., Inc., is Respondent.

(349 S. E. (2d) 89)

Court of Appeals

*Alexander S. Macaulay*, of *Miley & Macaulay*, Walhalla, *for appellant.*

*Robert A. deHoll* and *James H. Watson,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent.*

Heard June 17, 1986.

Decided Sept. 22, 1986.

BELL, Judge:

Glidden Coatings & Resins commenced an action to foreclose a materialman's lien on a construction project, known as the Fairfield project, for which it has supplied paints and materials. Suitt Construction Co., Inc. was the general contractor on the project and Arrow Painting and Sandblasting was the painting subcontractor. After Glidden filed its notice and certificate of mechanic's lien, Suitt posted the bond provided for in Section 29-5-110, Code of Laws of South Carolina, 1976, thereby discharging the real property from the lien. The circuit court entered judgment foreclosing Glidden's lien in the sum of $2,164.34 and granting Suitt judgment on its cross claim against Arrow in the sum of $107.61. Suitt filed a notice of appeal from the judgment, but did not perfect the appeal. Glidden cross appeals. We affirm.

The material facts are stipulated. In 1981, Suitt entered into a contract with Fairfield Manufacturing Co. to build a plant in Oconee County, South Carolina. The contract obligated Suitt to indemnify the owner for any mechanic's or materialman's liens placed on the project. Suitt then entered a subcontract with Arrow calling for Arrow to do the painting and concrete coating work on the project. With the consent of the owner and notice to Suitt, Arrow contracted with Glidden to supply paint. Because Arrow had failed to pay Glidden for materials furnished on other projects in the past, Glidden requested that Suitt remit payments on the Arrow subcontract by joint check payable to Arrow and Glidden until such time as Arrow's account with Glidden had been paid in full. Suitt refused to sign a joint payment request, but indicated it would attempt to issue joint checks to Arrow and Glidden. Suitt specifically stated it would not guarantee to issue joint checks nor would it guarantee any payment to Glidden. In fact, Suitt did issue five joint checks to Arrow and Glidden totalling $26,133.00. These five checks were endorsed by Glidden, but Glidden received none of the proceeds from them.

In October 1982, Arrow abandoned work on the Fairfield project. At that time, Glidden had furnished materials to Arrow valued at $19,300.26. Suitt hired another subcontractor to complete the work at a cost of $7,640.00 plus an additional $550.00 representing its own work and labor. In December 1982, Suitt paid $2,370.61 directly to Glidden to cover an invoice submitted that month. Prior to the time Arrow abandoned the job, Glidden gave no notice to Suitt or the owner that it had not received full payment for the paint and materials it supplied to Arrow.

Based on these facts, Glidden duly filed its notice and certificate of mechanic's lien against the project and thereafter brought suit to foreclose the lien and recover against Suitt's bond. Suitt defended on the ground that Glidden had received payment in full for paints and materials furnished to Arrow in the form of joint checks payable to Glidden and Arrow.

On the authority of *City Lumber Co. v. National Surety Corp.*, 229 S. C. 115, 92 S. E. (2d) 128 (1956), the circuit court held that any obligation to Glidden by reason of materials furnished to Arrow was discharged by its endorsement of the joint checks. Since the first two joint checks on the Fairfield project were issued before any money was due on Arrow's account with Glidden, the court deducted those two checks, totalling $8,997.08, from the amount Glidden was deemed to have been paid by joint check, leaving a debt owing of $2,164.34. The court then ordered the Fairfield lien foreclosed in that amount.

Although the parties have briefed several issues on appeal, one question is dispositive: if, at the request of the materialman, an owner or general contractor makes the materialman and a subcontractor joint payees on a check for labor and materials furnished, and there is no agreement with the owner or general contractor as to allocation of the proceeds, will the materialman, by endorsing the check, be deemed to have been paid the money due him to the amount of the joint check?

In our judgment, *City Lumber Co. v. National Surety Corp.*, 229 S. C. 115, 92 S. E. (2d) 128 (1956), clearly requires an affirmative answer to this question. *City Lumber* involved a suit by a materialman on the performance bond of a construction contract. The materialman, City Lumber, fur-

nished paint to the subcontractor, Drake, for which there was a balance totalling $2,251.74. During performance of the contract, Drake and the manager of City Lumber went to Southern Construction Co., the general contractor, and requested Southern to pay Drake on his subcontract so he might pay on his past due accounts for paint and labor furnished by others. Southern subsequently delivered a check to Drake in the amount of $3,500.00 payable jointly to Drake and City Lumber. With City Lumber's permission, Drake endorsed the check in City Lumber's name and collected it. He then wrote his own check for $500.00 to City Lumber. The remaining $3,000.00 he applied to his own use.

On these facts, the Supreme Court held that the action of City Lumber in endorsing the check without collecting the past due amount from Drake released Southern and its surety from liability for such indebtedness. The Court viewed this result as following from two well recognized rules of law: (1) when a creditor has in his hands the means of satisfying his debt out of the property of his principal debtor, and does not use it, but gives it up, the surety on the debt is discharged; and (2) where one of two innocent parties must suffer a loss, it must be borne by that one of them, who, by his conduct, has rendered the injury possible. As a named payee on the check, the materialman had a right to satisfy its debt in full from the check proceeds. By its own conduct, it let that position of advantage slip away. It would be patently unfair in such circumstances to allow the party who could have protected his own interest to shift the consequences of his neglect to another who had no duty to protect him.

We note that the joint check rule in *City Lumber* has been followed by other courts in actions involving materialman's liens. *See Anchor Concrete Co. v. Victor Savings & Loan Association,* 664 P. (2d) 396 (Okla. 1983); *Post Bros. Construction Co. v. Yoder,* 20 Cal. (3d) 1, 141 Cal. Rptr. 28, 569 P. (2d) 133 (1977); *F. & C. Engineering Co., Inc. v. Moore,* 300 S. W. (2d) 323 (Tex. Civ. App. 1957). It has also been cited with approval in a leading decision in another jurisdiction. *See F. & C. Engineering Co., Inc. v. Moore, supra.*

Applying the *City Lumber* rule to this case, we hold that in a suit by a materialman against the owner or general contractor, if, at the request of the mate-

rialman, the owner or general contractor makes the materialman and a subcontractor joint payees on a check for labor and materials furnished, and there is no agreement with the owner or general contractor as to allocation of the proceeds, the materialman, by endorsing the check, will be deemed to have been paid any money due him for materials furnished up to the amount of the joint check.

Glidden itself requested Suitt to issue joint checks. When Suitt did so, Glidden had within its power the means to insure it received the money due for paints and materials it furnished Arrow. It would be unfair for Glidden to let this money escape its control and then call on Suitt to pay for the paint, not once, but twice, because of Glidden's own avoidable failure to protect its interest. The case would be little different if Suitt, at Glidden's request, had paid Glidden directly by check for the paints and materials and Glidden had then endorsed the check to Arrow. It could hardly be claimed in such circumstances that Glidden had not been paid.

Contrary to the argument of Glidden, the mechanic's lien statute does not alter the joint check rule. The rule applies whether the materialman sues to foreclose a statutory materialman's lien, sues on a payment or performance bond, or sues directly on the contract with the owner or general contractor. The predicate for recovery in any of these suits is the existence of an unpaid debt. This is abundantly clear from a reading of the mechanic's lien statute, which states in pertinent part:

> Any person to whom a debt is due for labor performed or furnished or for materials furnished ... shall have a lien ... to secure the payment of the debt so due to him. ...

Section 29-5-10, Code of Laws of South Carolina, 1976. As we have had occasion to observe in another context, a valid security interest cannot exist without a valid underlying debt. *See Blackwell v. Powell*, 346 S. E. (2d) 731 (S. C. Ct. App. 1986) (mortgage).

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

SANDERS, C. J., and SHAW, J., concur.