**IOWA SUPPLY COMPANY, Appellee,**

v.

**GROOMS & COMPANY CONSTRUC-TION, INC., Merchants Bonding Company (Mutual)· and American Home Assurance Company, Appellants,**

**Smothers Electric Company, Appellee,**

**Steve Ehrenhard, d/b/a Colton Sheet Metal, Central Iowa Regional Housing Authority, Don Robinson, and Koogler Construction Company, Defendants.**

No. 87–837.

Supreme Court of Iowa.

Aug. 17, 1988.

Rehearing Denied Sept. 16, 1988.

Jerrold Wanek of Garten & Wanek, Des Moines, for appellee Iowa Supply Co.

Richard C. Bauerle of Johnson, Bauerle, Hester & Walter, Ottumwa, for appellants.

John E. Billingsley of Walker, Knopf & Billingsley, Newton, for appellee Smothers Elec. Co.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal concerns certain disputes arising from a public housing construction project. In April of 1983, the Central Iowa Regional Housing Authority (CIRHA) entered into a contract with Grooms and Company Construction, Inc., (Grooms) as the principal contractor in the construction of public housing projects in five central Iowa communities (CIRHA project). Grooms entered into a contract with Steve Ehrenhard, doing business as Colton Sheet Metal (Colton), to provide plumbing and heating work on the projects. Grooms also entered into a contract with Smothers Electric Company (Smothers) to perform electrical work on the CIRHA project.

### I. *Claims between Iowa Supply and Grooms.*

In order to complete their work as a subcontractor, Colton ordered certain materials and supplies from Iowa Supply Company (Iowa Supply). Iowa Supply provided materials worth $72,622.82 to Colton from approximately June 1983 through March 1984. These materials were used in the CIRHA project.

In late 1983 or early 1984, an employee of Grooms became concerned about the financial condition of Colton. After discussing this concern with the president of Iowa Supply and the project director of CIRHA, there was an agreement that Grooms would issue checks payable jointly to Iowa Supply and Colton. There was no written or oral agreement as to how the joint checks would be allocated.

In early January of 1984, Grooms issued the first joint check payable to both Colton and Iowa Supply. This check was for $24,-524.74. Both payees endorsed the check and the full amount was deposited into an account of Colton's. Colton then wrote Iowa Supply a check for $20,000, which was applied to the amount due from Colton on the CIRHA project. Colton retained $4,524.74 from that joint-payee check. In late January of 1984, Grooms issued a second joint check payable to both Iowa Supply and Colton. This check, for $26,903.61, was endorsed by both payees and deposited in an Iowa Supply account. Iowa Supply wrote a check to Colton for $11,903.61 and retained $15,000, which was credited to the amount due from Colton. As a result of the joint checks from Grooms, Iowa Supply retained $35,000 and Colton retained $16,-428.35.

On April 13, 1984, within thirty days of the final delivery to Colton, Iowa Supply filed an itemized statement of claim against Grooms and CIRHA pursuant to Iowa Code section 573.15 (1987). This statement showed a gross amount due to Iowa Supply for materials supplied to Colton of $72,-622.82. Iowa Supply deducted the $35,000 received from the joint checks and reported an unpaid balance due of $37,622.82. In April of 1984, Grooms paid Iowa Supply $13,932.19 to be applied toward the amount due Iowa Supply from Colton. At that time, Iowa Supply waived any claim in regard to the $48,932.19 which had been credited to the account of Colton. Subsequently, Grooms made an additional payment of $6,241.59 to Iowa Supply and received

$1,020.69 credit from Iowa Supply for returned merchandise and water heaters. Iowa Supply claims a deficiency of $16,428.35, the amount of money retained by Colton from the joint-payee checks issued by Grooms. Colton, meanwhile, filed for bankruptcy.

Iowa Supply filed a petition to establish its claim against Grooms and its bondsman under Iowa Code chapter 573 (1987). Grooms filed a counterclaim against Iowa Supply for tortious interference with a contract. The trial court entered judgment in favor of Iowa Supply for $16,428, but refused to award Iowa Supply a judgment for a two percent late-payment fee Iowa Supply sought from Grooms. The court also dismissed Grooms' counterclaim. Additionally, the trial court did not award either party attorney fees.

On appeal Grooms asserts that by endorsement of the joint-payee checks, Iowa Supply has waived any right to the $16,428.35 turned over to Colton. Grooms contends that Iowa Supply did not comply with the filing requirements of Iowa Code section 573.15 (1987). Grooms also claims that the trial court erred in dismissing its counterclaim against Iowa Supply. Iowa Supply appeals the trial court's denial of the late-payment fee as well as denial of attorney fees.

This case was tried in equity; review on appeal is de novo. Iowa R.App.P. 4.

A. *Joint payee checks.* In *Central Ready Mix Company v. John G. Ruhlin Construction Company,* 258 Iowa 500, 505, 139 N.W.2d 444, 447 (1966), a general contractor issued joint-payee checks payable to the materialman and subcontractor for amounts due the materialman. The joint-payee checks were issued following a conversation and informal agreement between representatives of the general contractor, subcontractor, and materialman. Because the materialman knew of the intention to utilize the joint-payee checks as a method of insuring that the materialman was paid, we held the materialman was required to retain the joint-payee checks and enter the full amount of the checks as payment on the subcontractor's account.

*Id.* at 505, 139 N.W.2d at 447. We stated, "[f]ailure of [the subcontractor] as payee to properly apply the payments does not lead to further liability of [the general contractor]." *Id.*, 139 N.W.2d at 447. After *Central Ready Mix* we summarized the law concerning joint-payee checks in a hospital lien case with the comment "a check made payable to multiple payees constitutes payment." *Broadlawns Polk County Hosp. v. Estate of Major,* 271 N.W.2d 714, 715 (Iowa 1978) (citing *Central Ready Mix,* 258 Iowa at 505, 139 N.W.2d at 447).

In *Central Ready Mix,* we cited two California cases, *Edwards v. Curry,* 152 Cal.App.2d 726, 313 P.2d 613 (Cal.Dist.Ct. App.1957), and *Westwood Building Materials Co. v. Valdez,* 158 Cal.App.2d 107, 322 P.2d 79 (Cal.Dist.Ct.App.1958). In *Edwards v. Curry,* the California District Court of Appeals held that a general contractor was released from liability to the materialman when the general contractor made payment by check payable jointly to the subcontractor and materialman. *Edwards,* 152 Cal.App.2d at 730–31, 313 P.2d at 615–16. In *Westwood Building Materials Company v. Valdez,* the California District Court of Appeals held that when the owner issues a joint check to the subcontractor and materialman, and there is no agreement to the contrary, the joint payees should ordinarily understand that the owner intends for the full amount of the check to be used to discharge the lien rights of the materialman. *Westwood,* 158 Cal.App. 2d at 113, 322 P.2d at 83.

These California cases culminated in the California Supreme Court decision of *Post Brothers Construction Company v. Yoder,* 20 Cal.3d 1, 5, 141 Cal.Rptr. 28, 30, 569 P.2d 133, 135 (1977). In *Post Brothers,* the court articulated what has become known as the "California Rule" concerning joint-payee checks. That rule provides: "[W]hen a subcontractor and his materialman are joint payees, and no agreement exists with the general contractor as to the allocation of proceeds, the materialman by endorsing the check will be deemed to have received the money due him." *Id.* at 5, 141 Cal.Rptr. at 30, 569 P.2d at 135. Several

other jurisdictions have also adopted this rule. *See, e.g., Anchor Concrete Co. v. Victor Sav. & Loan,* 664 P.2d 396, 399 (Okla.1983); *Medford School Dist. v. Peterson & Jones Commercial Constr., Inc.,* 76 Or.App. 99, 103–04, 708 P.2d 623, 626 (1985); *City Lumber Co. v. National Surety Corp.,* 229 S.C. 115, 120–21, 92 S.E.2d 128, 131 (1956); *Glidden Coatings & Resins v. Suitt Constr. Co.,* 290 S.C. 240, 243–44, 349 S.E.2d 89, 91 (S.C.App. 1986); *F. & C. Eng'g Co. v. Moore,* 300 S.W.2d 323, 326–27 (Tex.Civ.App.1957); *Dauphin v. Smith,* 42 Wash.App. 491, 496–97, 713 P.2d 116, 120 (1986) (dicta).

The joint-payee check rule articulated in *Central Ready Mix* and *Post Brothers* was developed in cases involving private, not public, construction projects. In such cases, the contractor and materialmen have the opportunity to protect their claims with a mechanic's lien on private property. *See* Iowa Code Chapter 572 (1987) (mechanic's lien statute). Here, the CIRHA project is a public works project governed by Iowa Code chapter 573. *See* Iowa Code ch. 572 (1987) (bonds for public works).

Iowa law treats claims in public works contracts and claims in private construction projects differently. *See Economy Forms Corp. v. City of Cedar Rapids,* 340 N.W.2d 259, 263 (Iowa 1983). We recognize that immunity of public property from private liens is the primary reason for this different treatment. *See id.; see also Lennox Indus., Inc. v. City of Davenport,* 320 N.W.2d 575, 577 (Iowa 1982); Calhoun, *Suretyship for the Iowa Lawyer,* 67 Iowa L.Rev. 219, 245 (1982). To provide protection in public works projects for contractors, subcontractors and materialmen unable to utilize a mechanic's lien, chapter 573 requires that the general contractor execute and deliver a bond running to the public corporation sufficient to insure the fulfillment of the conditions of the contract. *See* Iowa Code §§ 573.2, .5 (1987). This bond can be the object of a subcontractor's or materialman's claim, *see* Iowa Code § 573.7 (1987), and serves as a substitute for the protection of a mechanic's lien.

In resolving questions under Iowa Code chapter 573, we have looked to the federal interpretation of the Miller Act, 40 U.S.C. sections 270(a)–(d) (1982), the federal counterpart of Iowa Code chapter 573. *See Lennox Indus.,* 320 N.W.2d at 577. Federal cases dealing with joint-payee checks under the Miller Act have rejected the argument that endorsement of the joint-payee check by the materialman constitutes either payment or waiver of a materialman's claim against the general contractor.

*United States v. Glassman Construction Company,* 397 F.2d 8 (4th Cir.1968), dealt with facts very similar to this appeal. The federal court held that the endorsement of a joint-payee check by the materialman did not constitute payment or waiver as to the general contractor. The general contractor remained liable to the materialman for that amount of the joint-payee check which was not retained by the materialman. *Id.* at 10. Other federal circuits have followed *Glassman* when faced with a similar situation. *See United States v. Travelers Indem. Co.,* 802 F.2d 1164, 1166–67 (9th Cir.1986) (interpreting *Glassman* as looking to actual detriment of materialman, not trade practices as in *Post Brothers*); *United States v. Lloyd E. Tull, Inc.,* 770 F.2d 862, 865 n. 4 (9th Cir.1985) (acknowledges difference between *Post Brothers* and federal interpretation of Miller Act); *United States v. Kelley,* 456 F.2d 148, 151 (9th Cir.1972); *United States v. Forrester,* 441 F.2d 779, 782–83 (5th Cir.1971).

The treatment of joint-payee checks by this line of federal cases is in direct contradiction to the joint-payee check rule articulated in *Central Ready Mix* and *Post Brothers.* The principle distinction between these opposing views is that the federal cases address federal works projects governed by the Miller Act while *Central Ready Mix* and *Post Brothers* dealt with private construction projects. We must now determine if our reasoning in *Central Ready Mix* and the rule set forth in *Post Brothers* should apply to joint-payee checks issued on a public work project in Iowa under the protection of chapter 573.

Although we have previously considered federal interpretation of the Miller Act, we are not bound by federal decisions rejecting the joint-payee check rule when dealing with the Miller Act. There are several practical reasons for following the joint-payee check rule articulated in *Post Brothers*. The use of joint checks in this type of situation is well established in the construction industry. *See Post Brothers Constr. Co. v. Yoder*, 20 Cal.3d 1, 5, 141 Cal.Rptr. 28, 30, 569 P.2d 133, 135 (1977); *see also United States v. Lloyd E. Tull, Inc.*, 770 F.2d 862, 865 n. 4 (9th Cir.1985); *see generally* Moss, *Joint Checks: Practices in the Construction Industry*, 43 Cal.St.B.J. 242 (1968). The industry acceptance of this practice is demonstrated by the testimony of Mr. James Green, president of Iowa Supply. Mr. Green testified that this use of joint-payee checks is a "fairly common occurrence in the industry." He went on to state, "When he brings the [joint-payee check] in and obtains our signature on it, that's pretty good evidence that we're releasing the lien."

Under the joint-payee check rule, the materialman is in a position to demand payment in full from the subcontractor in return for endorsement of the joint-payee check. Likewise, the general contractor may use the joint-payee check to eliminate the risk that the subcontractor will not pay the materialman. The federal interpretation deprives the general contractor for a public works project of a well-established, simple, and expedient method for paying debts and providing protection to the materialman, the general contractor, and the public contracting authority.

We recognize the benefits derived from adopting the joint-payee check rule for both private and public improvement projects. To provide consistent application of industry standards which provide the protection set forth in Iowa Code chapter 573, we adopt the joint-payee check rule as established in *Post Brothers* and decline to follow the federal cases consistent with *Glassman*.

When a general contractor issues a check payable jointly to the materialman and subcontractor, endorsement of that check by the payees will be treated as payment to the materialman by the maker of the check. This is a narrow holding which does not prevent suit by the materialman against the copayee or its surety. This rule only bars claims against the maker of the check for the money due from a subcontractor up to the date of the check and up to the amount of the check.

Iowa Supply contends that this holding is inconsistent with *Lumber Supply Inc. v. Hull*, 158 N.W.2d 667, 672 (Iowa 1968). In *Lumber Supply*, we applied the general rule that if a debtor does not direct how the payments are to be applied, the creditor may apply the payment to any of the debtor's accounts. We stated, "[i]f the debtor fails to direct the application of the funds, we believe a third party seeking to require a creditor to apply the payment to his account must show he was the source of the money paid the creditor." *Id.* We did not address the use of joint-payee checks as payment or waiver of a claim against the maker.

Because of our adoption of the California rule concerning joint-payee checks, we hold that Iowa Supply is not entitled to recover the $16,428.35 from Grooms. We reverse the district court's judgment for Iowa Supply against Grooms for $16,428. Because of this holding, Iowa Supply is not entitled to a late-payment fee and we therefore affirm the court's denial of that claim. We also affirm the trial court's judgment which denied attorney fees to either Iowa Supply or Grooms. Because Iowa Supply is not a successful party, it cannot recover costs against Grooms. *See* Iowa Code § 625.1 (1987).

B. *Counterclaim for tortious interference.* Grooms' counterclaim against Iowa Supply for tortious interferences with a contractual relationship was without merit. The record reflects that Iowa Supply acted on the advice of counsel and asserted, in good faith, a legally protected interest. A party acting in that manner has not tortiously interfered with a contractual relationship. *See C.F. Sales, Inc. v. Amfert*, 344 N.W.2d 543, 555 (Iowa 1983); *see also*

*Liberty Loan Corp. v. Williams,* 201 N.W. 2d 462, 465 (Iowa 1972) (advice of counsel obtained in good faith is defense for malicious prosecution). We affirm the trial court's dismissal of Grooms' counterclaim.

## II. *Claims Between Smothers Electric Company and Grooms.*

 As stated earlier, Grooms entered into a contract with Smothers Electric Company (Smothers) to perform electrical work on the CIRHA project. That contract provided that Smothers would receive $51,000 from Grooms upon satisfactory completion of the work. Grooms considered Smothers' work incomplete and substandard, and paid Smothers only $47,416.07; leaving a deficiency of $3,583.43. Smothers was joined as a party in the action commenced by Iowa Supply. *See* Iowa Code § 573.17 (1987). Grooms appealed the judgment and asserted that the court did not have jurisdiction because Smothers failed to properly file its claim.

The trial court found Smothers was entitled to a judgment for $651.21 of the balance remaining to be paid on the contract. Smothers did not file a claim with CIRHA as provided in Iowa Code section 573.7. Acting pro se, Smothers instead filed a mechanic's lien under the provisions of Iowa Code chapter 572. Even though Smothers did not properly file his claim, it was properly considered by the court. Iowa law recognizes that if one claim against a general contractor results in an action against the retainage under Iowa Code chapter 573, other claimants who have dealt directly with the general contractor may participate in a suit to recover against the retainage, even though the claimants did not properly file their claims. This principle has been referred to as "piggybacking." *See Lumberman's Wholesale Co. v. Ohio Farmers Ins. Co.,* 402 N.W.2d 413, 415 (Iowa 1987). Because claims by other parties were properly brought against Grooms, the claim of Smothers, who dealt directly with Grooms, is properly included in this action.

The record reflects that several aspects of Smothers' work did not comply with the contract requirements. Certain poles, underground cables and telephone lines were improperly installed. Smothers also failed to correct other deficiencies noted at the final inspection. We affirm the trial court's judgment of $651.21 for Smothers. We reverse the trial court's judgment awarding Iowa Supply $16,428 and costs. We affirm the remainder of the court's judgments and remand for the appropriate entry of judgment and costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.