**UNITED STATES, for the Use of MARMET CORPORATION,**
**Plaintiff,**

v.

**BECON SERVICES CORPORATION and Aetna Casualty and Surety Co., Defendants.**

Civ. A. No. 91–2502.

United States District Court,
District of Columbia.

July 17, 1992.

Patrick James Attridge, King and Attridge, Gerald J. O'Brien, Rockville, Md., for plaintiff.

Merrill Cohen, Bethesda, Md., for defendant.

MEMORANDUM AND OPINION

REVERCOMB, District Judge.

Plaintiff seeks recovery under the Miller Act (40 U.S.C. § 270b) for allegedly unpaid construction material bills. Both plaintiff and defendants now move for summary judgment. The Court heard full argument on the motions at a hearing conducted on July 15, 1992, based on the facts as set forth in the parties' pleadings and affidavits. The parties agree that there are no material facts in dispute. For the reasons set forth below, the Court must order summary judgment in favor of the plaintiff.

*Facts*

The essential facts are as follows. Defendant Becon Services Corporation was the prime contractor to the Department of the Army for a construction project in Washington, D.C. Defendant Aetna was Becon's surety on the contract. Becon subcontracted Olympus Glass to furnish a portion of labor and materials for the job. Olympus, in turn, contracted with defendant Marmet Corporation, a materialman, to supply materials. Olympus arranged with Becon to pay Marmet's billings with checks made payable jointly to Olympus and Marmet. Olympus also entered into a "retainage agreement" with Marmet under which Olympus would withhold for a period of months 10 percent of amounts owing to Marmet for materials it supplied. Becon was not privy to this retainage agreement, which Marmet characterizes without contradiction as "an adhesion contract" prepared by Olympus.

Marmet provided all the materials ordered and, between June and November 1990, sent Olympus eight separate invoices which Olympus forwarded to Becon. In response, between September and December 1990, Becon issued four joint checks payable to Olympus and Marmet in the exact amounts stated on the Marmet invoices.[1] The dispute in this case arises from

---

1. Becon's four joint checks were payable as follows: one for the combined amount of two

the circumstances surrounding these four joint checks.

Becon points to the amount of these joint checks as "[m]anifestly" indicating its espoused intent that the checks were to serve as full payment for Marmet's materials invoices. However, upon receipt of the first of these checks, which was made out for the combined amount of Marmet's first *two* invoices, Olympus' administrative manager wrote to Marmet on October 1, 1990, stating

> [w]e are in receipt of a check from Becon Services in the amount of $138,153.00 which represents a partial payment on our account with them. This check has been issued jointly to us and your company as we requested it to be.
>
> We intend to endorse this check over to you under the following conditions.
>
> We will pay 90% of your invoice ə 34952 which amount [sic] to $83219 from this draw. A company check from Marmet Corporation will be issued to Olympus Glass in the amount of $54,933.60 and sent via Federal Express to Olympus Glass. . . .

The amount proffered by Olympus—$83,219—equals 90 percent of the amount of Marmet's *first* invoice, indicating the administrative manager's apparent belief that Becon was remitting payment for only *one* invoice. Marmet subsequently accepted the administrative manager's proposal, received and deposited the Becon check, and then sent Olympus a check for $54,933.60—presumably to cover $9,246.60 in retainage,

*i.e.*, 10 percent of the first invoice, and $45,687 in supposed excess to Marmet—"believ[ing] that it was not entitled to keep more than $83,219.00 from [Beacon's] . . . check because of the information given to Marmet by the Olympus Glass letter of 10/1/90 and the terms of the supply contract regarding retainage." Marmet Statement of Undisputed Material Facts, para. 23.

Regarding the second and third joint checks, Marmet states that Olympus did not request, and so Marmet did not pay, any retainage. However, Becon's fourth joint check, dated December 11, 1990, was payable in the amount of $104,276.00; on this check, "Marmet negotiated for a reduced retainage, and the two parties [Olympus and Marmet] agreed upon a retainage of $8,941.20." Plaintiff's Memorandum in Support of Summary Judgment at 4. As before, Olympus endorsed the Becon check and sent it to Marmet, and Marmet endorsed and deposited that check and sent Olympus its own check for $8,941.20.

It is thus clear that Marmet received full payment, at least physically, for all eight of its invoices but voluntarily returned a total of $63,847.80 to Olympus in compliance with Olympus' directions pursuant to the retainage agreement. Ultimately, Olympus defaulted on its agreement to pay Marmet the retainage Marmet remitted. Marmet now seeks an award against Becon of $58,981.80 based on the following calculation:

| $ 267,646.63 | **sum due Marmet under contract w/ Olympus** | |
|---|---|---|
| | $ 138,153.00 | joint checks from Becon |
| | 10,818.00 | |
| | 3,477.00 | |
| | 104,276.00 | |
| | $ 256,724.00 | |
| | | |
| | $ 15,000.00 | other checks from Olympus |
| | 815.63 | |
| | $ 15,815.63 | |
| | | |
| | $ 272,539.63 | **total checks to Marmet** |

invoices dated June 22, 1990; one for the combined amount of two invoices dated August 8, 1990, and September 7, 1990; one for the amount of single invoice dated October 1, 1990; and one for the amount of a single invoice dated November 11, 1990.

$ 54,933.60    amounts returned by Marmet
   8,941.20
$ (63,874.80)   **total returned by Marmet**

$(208,664.83)   $ 208,664.83    **amount retained by Marmet**

$  58,891.80

---

*Discussion*

The above facts present a close case, since there are considerable equities and inadequacies on both sides. Defendant Becon argues in essence that, by making out its joint checks in the amounts of Marmet's invoices, it effectively directed the application of its payment—as is its right to do—and that it should not be subject to the retainage agreement, under which Marmet returned money to Olympus, to which it was not privy and of which it had no knowledge. Becon points out that the Marmet invoices it paid were all prominently marked "no retainage allowed" and that, although Marmet may not have been party to Olympus' joint check agreement with Becon, Marmet was placed on notice of this agreement by Olympus' October 1, 1990, letter, which Marmet received before obtaining any payments on the contract. Becon argues that it should not be required to pay twice for the supplies it received.

Marmet, for its part, points to the general rules relating to allocation of payments from a prime contractor in Miller Act cases, *see Silver Hill Concrete Corp. v. Thomason Indus.*, 556 F.Supp. 291, 293–94 (D.D.C.1982), *aff'd* 704 F.2d 1294 (D.C.Cir. 1983), which provide that an undesignated payment from a prime contractor is to be applied as the debtor (*i.e.*, the subcontractor) intends and directs, and that the substantial burden of proving sufficient designation by the prime contractor and misapplication by the supplier lies with the prime contractor. In this regard, the Court notes the further admonition of *Silver Hill*, quoted but not discussed by plaintiff, that

> If the debtor [the subcontractor] is under a duty to a third person [the prime contractor] to devote funds paid by him to discharge a particular debt, the payment

must be so applied if the creditor [the supplier] *knows or has reason to know of that duty. This is so despite the debtor's contrary direction.*

*Id.* at 293 (emphasis added). In *Silver Hill*, this admonition arose in context of a supplier's application of payments to unbonded, as opposed to bonded, accounts; here, there is only one account at issue, and it was bonded. The question raised here, nonetheless, is whether Marmet was reasonable in following Olympus' direction to remit certain amounts to it under the retainage agreement, rather than considering the amounts of the four joint checks as affirmative designations of Becon's intent that the checks be applied fully to the invoiced materials.

The Court weighs two pertinent considerations in this regard. First, as noted in *Silver Hill*, is that

> "[t]he Miller Act ... is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects."

*Id.* at 295 (quoting *United States for the Use of Sherman v. Carter*, 353 U.S. 210, 216, 77 S.Ct. 793, 796, 1 L.Ed.2d 776 (1957)). Second are the holdings of at least two federal circuit courts of appeal that a subcontractor's or materialman's failure to deduct its current balance due from a joint check presented to it does not work to waive its statutory right to sue for amounts owed under the Miller Act, particularly in the absence of an express waiver of that right. *United States for the Use of Ponoma Tile Manufacturing Co. v. Kelley*, 456 F.2d 148, 151 (9th Cir.1972); *United States for the Use of Clark–Fontana*

*Paint Co. v. Glassman Construction Co.,* 397 F.2d 8, 10–11 (4th Cir.1968).

It is clear that Becon's joint checks contained no express waivers of Miller Act rights and, as in *Clark–Fontana,* this Court declines to infer such waivers. As to Becon's purported "manifest" designation of its payments, as evidenced solely by the coincidence of the check amounts with the invoice amounts, the Court finds as a matter of law that such purported designation was in no way self-evident and that, absent any other notation or direction indicating Becon's espoused intent, a reasonable person would quite likely *not* have perceived a designation, particularly within the stream of dealings over a period of months that is evident here. This fact, together with Marmet's compliance with Olympus' affirmative directions in accordance with their retainage agreement and the remedial nature of the Miller Act itself, combine in this Court's opinion to defeat Becon's defense to Marmet's action under the Miller Act based on the theory that payment actually occurred. Moreover, based on the fact adduced during oral argument that Becon itself has retained payments from Olympus for reasons of inadequate performance on their contract, the Court finds that Becon as the prime contractor is best placed, consistent with the intent of the Miller Act, to pursue contract remedies against Olympus, just as it was best placed to ensure full payment to Marmet by way of an express designation on its joint checks or by requiring Olympus to escrow funds or post a bond for that purpose.

For the foregoing reasons, the Court grants summary judgment favor of the plaintiff.