THE BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, ex rel. John BERTOLINO, d/b/a Bertolino Sheet Metal Company, Plaintiff/Respondent,

v.

VINCE KELLY CONSTRUCTION COMPANY, INC. and Reliance Insurance Company, Defendants/Appellants.

No. 71695.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 16, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 9, 1998.

Application for Transfer Denied
March 24, 1998.

Joseph J. Porzenski, St. Charles, for appellant.

Paul E. Kovacs, St. Louis, for respondent.

RHODES RUSSELL, Judge.

Defendant, Reliance Insurance Company ("surety") appeals from the judgment entered upon a jury verdict entered in favor of plaintiff, John Bertolino, d/b/a Bertolino Sheet Metal Company ("materialman"). At issue in this case is whether the joint check rule applies to a public contract and, if so, whether a surety was entitled to a directed verdict on a materialman's claim for payment on a Labor and Material Payment Bond where the materialman endorsed a joint check but did not receive all of the proceeds thereof from the co-payee. We find the joint check rule applies to a public contract and to the facts of this case. We accordingly reverse the trial court's judgment.[1]

Vince Kelly Construction Company, Inc. (Kelly) entered into a contract with the City of St. Louis to renovate the Farragut and Woerner Schools. Kelly then sub-contracted with Hart Mechanical (Hart) to perform certain mechanical work at the two schools. Hart in turn engaged materialman to perform ventilation work on the projects. Pursuant to section 107.170, RSMo 1994,[2] Kelly obtained a Contract Labor and Material Payment Bond from surety.

Materialman commenced work on the projects in the fall of 1990. Soon thereafter, he became concerned about Hart's financial security. As a result of this concern, he submitted an invoice dated February 8, 1991 which showed $12,600.00 due on the December 1990 billing and $9,000.00 due on the January 1991 billing.

On February 14, 1991, Kelly issued a check payable jointly to Hart and materialman in the amount of $21,600. Both parties endorsed the check and Hart then wrote materialman a check for $8080.22, promising to pay the balance the following month. However, Hart never paid materialman. Hart subsequently walked off the job due to financial difficulty.

On May 9, 1991, materialman sent a statement to Kelly showing a past due amount for work billed in December 1990 and January 1991 of $13,519.78. Kelly issued a check in

---

1. Materialman's motion for attorney fees and expenses on appeal is denied.

2. All statutory references are to RSMo 1994 unless otherwise indicated.

this amount on May 16, 1991. In March 1992, materialman sent Kelly a final bill in the amount of $10,507.00. Kelly refused to pay.

On July 20, 1992, materialman sent a demand letter to Kelly and surety at a local address claiming it was owed $10,507.00 on the school projects.[3] The bond claims attorney from surety advised that surety had not received the correspondence until September 29 and asked materialman to fill in a claim form and submit information to surety. Surety advised materialman of Kelly's position that materialman had been overpaid $3,515.78 by means of a joint check.

Materialman filed a petition on the contractor's bond to establish its claim against Kelly and surety under section 522.300. At trial surety moved for a directed verdict at the close of all evidence, which the trial court denied. Materialman dismissed Kelly before the case was submitted to the jury. The jury returned a verdict in materialman's favor and it awarded materialman payment on the bond, and it also awarded interest, penalties for vexatious refusal to pay, and attorney's fees. Surety subsequently filed a motion for judgment notwithstanding the verdict (JNOV) and for a new trial, which the trial court denied. This appeal follows.

Surety raises four points on appeal. Surety first argues that the trial court erred in denying its motion to dismiss materialman's second amended petition for failing to state a claim upon which relief could be granted in that materialman failed to plead surety's legal capacity to be sued as a corporation. In its second point, surety contends the trial court erred in denying its motion for a directed verdict and its motion for JNOV in that materialman was deemed to have received the money due to him by endorsing the joint check made payable both to materialman and Hart. In its third point, surety maintains the trial court erred in denying its motion for directed verdict and JNOV because there was insufficient evidence adduced at trial to avoid the application of the joint check rule, and that there was insuffi-

cient evidence presented that its refusal to pay materialman's claim was willful and without reasonable cause or excuse. Finally, surety contends that the trial court erred in refusing three jury instructions based upon the affirmative defense of the joint check rule. Because we find points two and three to be dispositive, we do not address points one and four.

█ In reviewing the denial of a motion for a directed verdict, we view the evidence in the light most favorable to the plaintiff. *Seidel v. Gordon Gundaker Real Estate Co.*, 904 S.W.2d 357, 361 (Mo.App.1995). A directed verdict is a drastic action and should only be granted where reasonable persons could not differ on a correct disposition of the case. *Id.*

Surety argues that the trial court erred in denying its motions for directed verdict and for JNOV because under the joint check rule and section 400–3–310(b) governing the discharge of obligations, materialman has not only been paid in full, but has been overpaid. In response, materialman argues that the joint check rule is foreign to Missouri law and alternatively, that even if accepted, the joint check rule would not apply to this case.

█ The joint check rule provides that, in the absence of an agreement to the contrary, if a material supplier receives and endorses a joint check without collecting the amount then due from the maker, the supplier is not entitled to assert a mechanic's lien or payment bond claim. *Post Bros. Constr. Co. v. Yoder*, 20 Cal.3d 1, 141 Cal.Rptr. 28, 569 P.2d 133 (1977); *See also* Sidney R. Barrett, Jr., *Joint Check Arrangements: Release for the General Contractor and Its Surety*, 8 CONSTR. LAW. 7 (1988).

█ The Missouri Court of Appeals adopted the joint check rule in *Southwest Hardware & Lumber Co. v. Borgerson*, 77 S.W.2d 195 (Mo.App.1934). There, the owners of a house appealed from a judgment ordering them to pay a supplier $1,041.52 for materials furnished in the construction of

---

3. Materialman stated that he was owed $5,365 on the Farragut project and $5,142 on the Woer-     ner project.

their house. The owners argued that they had already paid the supplier in full through checks payable jointly to the supplier and the contractor and that supplier had, by endorsing the checks, waived his right to further payment from them. *Id.* at 196. The court of appeals reversed the trial court, holding that the supplier had received the money due him as a matter of law. *Id.* at 197. The court reasoned that because the supplier had turned its portion of the joint checks over to the contractor by choice, it could only look to the contractor for repayment. *Id.* The joint check rule has been widely adopted by other state courts.[4] The dual purpose of the rule, as explained by the adopting courts, is to protect suppliers and laborers by ensuring payment and also to protect owners and general contractors by eliminating potential lien claims.

■ The next question is whether the joint check rule applies to public construction projects. Under Missouri law, public and private construction projects are treated differently due to the fact that mechanic's liens are unavailable on public land. *Redbird Eng'g Sales, Inc. v. Bi–State Development Agency etc.*, 806 S.W.2d 695 (Mo.App.1991). In order to protect laborers and suppliers performing public works contracts, section 107.170.1 provides in relevant part:

> It is hereby made the duty of all officials, boards, commissions, commissioners, or agents of the state, or of any county, city, town, township, school, or road district in this state, in making contracts for public works of any kind to be performed for the state, or for such county, city, town, township, school or road district, to require every contractor for such work to furnish to the state, or to such county, city, town, township, school or road district, as the case may be, a bond with good and sufficient sureties, in an amount fixed by said officials, boards, commissions, commissioners, or agents of the state, or of such

county, city, town, township, school or road district . . .

The joint check rule does not apply in public construction cases arising under the Miller Act, the federal equivalent of section 107.170.[5] *See United States use of Marmet Corp. v. Becon Services Corp.*, 794 F.Supp. 428 (D.D.C.1992) (where joint check contains no express waiver of Miller Act rights, none will be found); *United States use of Youngstown Welding & Engineering Co. v. Travelers Indemnity Co.*, 802 F.2d 1164 (9th Cir. 1986) (waiver of rights under Miller Act will not be implied from joint check arrangements); *United States use of Clark—Fontana Paint Co. v. Glassman Constr. Co.*, 397 F.2d 8 (4th Cir.1968) (absent clear language of waiver, none will be implied). The federal courts explain their rejection of the joint check rule based on the legislative intent that courts construe the Miller Act liberally. However, state courts, governed by similar public bond statutes, have declined to follow the Miller Act cases and have applied the joint check rule to public construction cases. *See Iowa Supply Co.*, 428 N.W.2d at 666.

This court has found federal treatment of the Miller Act persuasive in construing section 107.170 in different contexts. *See School Dist. etc. v. Transamerica Insurance Co.*, 633 S.W.2d 238, 248 (Mo.App.1982). However, the Miller Act does not bind Missouri courts in their interpretation of section 107.170. *Finch Equipment Corp. v. Frieden*, 901 F.2d 665, 668 (8th Cir.1990). The federal cases are not persuasive on the joint check issue. The purpose of section 107.170 is to provide the same protection to public workers as mechanic's lien law provides to private workers. *Redbird*, 806 S.W.2d at 701. Immunizing suppliers and laborers from the joint check rule in public construction cases would serve to provide more protection than mechanic's liens provide. If the legislature intended for publicly employed laborers to

---

4. *See e.g. Brown Wholesale Elec. Co. v. Beztak of Scottsdale*, 163 Ariz. 340, 788 P.2d 73 (1990); *Iowa Supply Co. v. Grooms & Co. Constr., Inc.*, 428 N.W.2d 662 (Iowa 1988) (adopting the rule in a public construction project); *Medford School Dist. ex rel. North Coast Elec. Co. v. Peterson & Jones Commercial Constr., Inc.*, 76 Or.App. 99,

708 P.2d 623, 626 (1985); *Anchor Concrete Co. v. Victor Sav. & Loan Ass'n*, 664 P.2d 396, 399 (Okla.1983); *Post Bros. Constr. Co. v. Yoder*, 141 Cal.Rptr. at 30, 569 P.2d at 135.

5. 40 U.S.C.270a *et seq.*

receive more protection than privately employed laborers, it would have so provided.

■ Materialman next argues that, even if the joint check rule applies to public construction cases, it nevertheless would not apply here where it is suing to receive payment for work completed after the joint check was issued. In *Iowa Supply Co.*, 428 N.W.2d at 666, the court held that the joint check rule discharges a surety only for amounts owing to a creditor at the time a joint check is issued and only up to the amount of the check.[6] In this case the joint check was issued for amounts then owing materialman. Materialman's February 8 invoice showed "$12,600 (due)" on the December billing and "9,000 (due)" on the January billing. The joint check, dated February 14, 1991 was for the exact total of the two amounts billed. Materialman's claim that the $9,000.00 was not in fact due is contradicted by his own invoice. The issuance of the joint check in payment of the February 8 invoice precludes materialman from asserting a payment bond claim for amounts covered by the check.

Alternatively, materialman argues that general contractor waived the joint check rule defense by issuing the May 1991 check covering the amount that Hart had withheld. Because materialman has not asserted any authority for this proposition, we decline to address it.

The joint check rule barred materialman's recovery as a matter of law. The trial court erred in not directing a verdict in favor of surety on this issue.

■ Surety also argues in its third point that the trial court erred in denying its motion for a directed verdict and its JNOV motion in that there was insufficient evidence to establish a vexatious refusal to pay claim. Surety argues that because it had a reasonable defense for not paying materialman on the bond (i.e. the joint check rule), the award of penalty and attorney's fees was in error. We agree.

■ Section 375.420 provides statutory penalties and attorney's fees for an insurance's company's vexatious refusal to pay a claim. Section 375.420 provides in relevant part:

> In any action against any insurance company to recover the amount of any loss ... if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee [.]

■ Section 375.420 applies to suits on surety bonds. *Marcomb v. Hartford Fire Insurance Co.*, 934 S.W.2d 17, 20 (Mo.App. 1996). The statutory penalty for vexatious refusal to pay cannot be imposed unless the evidence demonstrates that the surety's refusal to pay the claim was willful and without reasonable cause. *Id.* The purpose of section 375.420 is to deter a surety or insurance company from vexatiously refusing to pay after it has become aware that it has no meritorious defense. *Id.*

Our having concluded that surety was correct in not paying materialman based upon the joint check rule rebuts any contention that it did not have a meritorious defense for refusing to pay. We find the imposition of penalty and attorney's fees to be in error.

The judgment of the trial court is reversed and this cause is remanded with directions that judgment be entered in favor of surety.

AHRENS and JAMES R. DOWD, JJ., concur.

6. *See also Medford School District*, 708 P.2d at 625.